Okay, the next case on the docket is 514-0061. He will be Julian Gates. Okay, you may proceed, but my sheet's missing, so introduce yourself for the record. May I please report? My name is Jennifer Lassie, and I'm with the Office of the State Appellate Defender, and I represent the defendant's appellant, Mr. Julian Gates. Okay, Ms. Lassie, would you speak up because, as I think I told you, we have a justice missing, and he's going to want to hear everything you have to say. Okay, so the issue here is whether Mr. Gates could have made a knowing and voluntary guilty plea where the trial court improperly admonished him about the sentence he was facing. At a minimum, due process principles require that a defendant be informed of the minimum and maximum sentence he faces when pleading guilty. And just to clarify the relevant facts here, Mr. Gates was charged with first-degree murder, which generally carries a 20- to 60-year sentence. And the state initially filed notice of intent to seek a discretionary natural life sentence, meaning that if he was found guilty and if the jury made certain findings, he might get a natural life sentence. However, the law focuses on the period at the time of the guilty plea, and on the day... I didn't understand that. The law focuses on... Oh, the law focuses on how he's being charged at the time of the guilty plea. Okay. So on the day that he was scheduled to go to trial, the state filed an amended notice asking for a mandatory natural life sentence. And this amended notice would supersede that original notice of intent to seek that discretionary sentence. So on the day he was scheduled to go to trial, the state is asking for this mandatory life sentence under Section A1C2. And this would be a good strategic decision on the state's part, had that statute been constitutional, because there's no better way to get someone to plead guilty than to threaten them with the worst sentence allowed under Illinois law. So on the day he was scheduled to go to trial... Joining the death penalty. I'm sorry? You said the worst that one could have. Are you referring to the death penalty? No, natural life sentence. That's the most that's available under Illinois at this point. At that point, yeah. Yeah. So on the day he was scheduled to go to trial, the state offers him a gift. It says, well, here's a plea deal. We'll ask for no more than 60 years, and you can ask for as little as 20. The problem with the state's gift is that when you open it, the box is empty, because Mr. Gates was only ever facing 20 to 60 years, and this deal was no deal at all. The Section A1C2 that the state was pursuing this mandatory natural life sentence under, that has been found unconstitutional and has never been reenacted. Therefore, when the trial court admonished Mr. Gates that he was facing natural life, meaning he would never get out of prison if he went to trial, this was an improper admonishment. Now, in its brief, the state spends a great deal of time arguing whether or not Mr. Gates was prejudiced. Was this preserved at the time of the plea on the post-trial motion, or are you stuck with plain error here? Right. So this was never raised at the trial level. So we have plain error. Yes, we do. So the state argues that Mr. Gates was not prejudiced, and as evidence of this, it looks to the post-trial motions he filed trying to withdraw his – or the post-plea motions he filed trying to withdraw his guilty plea, and the state points out, well, he never cited these improper admonishments as the reason he pled guilty, so he can't be prejudiced by these improper admonishments. However, the case law cited in the reply brief makes clear that our law does not place the onus on a defendant to ensure that his admonishments at the guilty plea hearing were proper. We place this duty on the trial court. Wasn't there some admonishment, and the court asked Mr. Gates whether he was aware of what the court was talking to him about? Right. So the court tells him if you go to trial, you could get up to natural life, but by pleading guilty, you get 20 to 60, and Mr. Gates says he's aware of this, and that's because the state, the court, and his trial counsel have all said if you go to court, you could get natural life – or if you go to trial, you could get natural life, but by pleading guilty, you're getting this deal of no more than 60. So the argument that the improper admonishments, the error with the improper admonishments wasn't raised sooner, I believe this court should entirely disregard that argument because due process principles require that the court properly admonish a defendant, and when the court doesn't do that, we can't expect the defendant to do so on his own. What about the state's theory that they could have charged him differently and did later and asked for natural life? Right. So I think the argument that what we could have, might have, should have done something is irrelevant to what happened at the time of the plea deal. I think we would all agree that perhaps if a defendant was correctly admonished early on about theft charges, if we looked at whether he was properly admonished later on on burglary charges, none of us would say, well, he was properly admonished at one point under that theory of charging, so let's disregard what happened at the guilty plea hearing. And I would compare it to cases where we have defendants argue, well, my trial counsel told me I might get this sentence. Our law says, no, we looked at what the court told you at the guilty plea hearing. This is what is relevant, what occurred at the time of the guilty plea. And it's clear that the transcripts make clear that the trial court did err in its admonishment. So the state also argues that Mr. Bates was not prejudiced because, well, he was sentenced within the range he was told. He was told he could get up to natural life, and he got less than that, so it's okay. But this argument completely misses the point. The issue here is not whether he was sentenced within the range he was told he might get. The prejudice here is in the admonishments itself, and you need look no further than those admonishments. He's told if you go to trial, you can get up to life, but by pleading guilty, you've got this deal of 20 to 60 when he never faced more than 60. So he got no deal at all. He pled guilty and saved the state the burdens of going to trial, and in exchange, he got nothing. This gift of a plea deal was nothing but an empty box and a pretty package. So your argument basically is that he pled guilty only because life was taken off the table. Yes, Your Honor. So the state filed this intent to get a mandatory natural life sentence, and on that day, he pled guilty. But on the day they filed it, had the court admonished your client in light of the amended information or affidavit, which it had to be something from the grand jury, an indictment if it was murder. Was it an amended indictment? So it was an amended intent to seek an enhanced sentence. Okay, so it was just a motion. Correct. So if your client would have been admonished on that day with the filing of that motion, the court would have been correct in saying you could get life? Under the admitted motion. That's what I'm asking. Yes. No, the court, he could not get life under that because that statute has been held unconstitutional. But it was held unconstitutional after he was found guilty, right? Oh, no, the statute was held unconstitutional in 1999, and this guilty plea hearing occurred in, I believe, 2013. I didn't know that, so I learned something. Thank you. So they sought the mandatory, so originally they were seeking a discretionary natural life sentence. However, that was superseded, and that's off the table and not relevant to what happened at the guilty plea hearing because at that time they were asking for a mandatory natural life sentence under this Section A1C2, and that was found unconstitutional by our Illinois Supreme Court in People v. Wooters and again by the Second District in People v. Quevedo in 2010, and this court found that the statute had been found unconstitutional and has never been reenacted just as recently as last year. But was that a deliberate thing that they were seeking the mandatory, or was it a mix-up in just designating it as mandatory versus discretionary? Why would they do that? I don't know. So I would say this would be a good decision to make because with the original notice asking for a discretionary life sentence, we don't know that he's going to get it. He might get a life sentence. We don't know. The statute that they originally were proceeding under provided for a discretionary life sentence. When they go for this one, the mandatory life sentence, it means that if he's found guilty, he's getting life, and that's it. So I think it would be a wise decision on the state's part to get a guilty plea because nothing's more terrifying than knowing I'm never getting out of prison. I know, but the feeling of that kind of motion is really almost kind of a deceptive. I recall now the case between the mandatory and the discretionary. I had slipped on that. So I'm going to be looking forward to asking the state that question. Go ahead. Yeah, I find it. Did you have one other thought you wanted to conclude? I would just point out to this Court that I think the improper admonishment itself deterred Mr. Gates from trying to negotiate any deal at all, and he essentially pled guilty to a blind plea to first-degree murder because of these improper admonishments. Okay, and you'll have some time to reply after we hear from Ms. Camden. So why would the state do that? I don't know, Your Honor. I know that you look at the record very carefully when you appear before us. Yes, Your Honor. And is it true that the state filed this amended motion pursuant to the unconstitutional statute? Yes, Your Honor. Interesting. What happened was plea negotiations for months prior to the date of the plea were based on the discretionary natural life theory, the theory based on wanton cruelty. On the date of the plea, the state filed this substitution. I don't know why. The state at the plea hearing cited that mandatory natural life statute, the A1C2. The state didn't say that it was mandatory natural life. The state just said that the terms of the plea were that the state would withdraw A1C2 in exchange for the plea. It didn't use the word mandatory, or otherwise hint that the judge wouldn't have discretion as regards to the sentence. The next thing that happened was that the court admonished the defendant that the sentencing range, if he didn't plead guilty, was between 20 years imprisonment and natural life. Now, notice that that's contrary to the statute that the state had just cited, which was mandatory natural life. I'm glad you saw that, too, Your Honor. And neither counsel for the state nor counsel for the defense corrected the court and said, actually, Your Honor, contrary to the statute that the state just cited, that isn't the sentencing range. But the court abided by the constitutional provision, is your argument. Well, I'm pointing out that the court's language was consistent with the prior. But not so clear. Right. Yeah. And this confusion really does add to the main problem on appeal, which is that the record just is silent on exactly what happened here. And what effect, if any, the state's last-minute substitution of that mandatory natural life theory had on the plea negotiations. This court has heard earlier today about cases with missing pages. This case is missing a chapter. It was the so what happened was the defense filed a motion to withdraw the plea based on reasons completely unrelated to the sentence or the admonishment. And while the defendant argues that it's unfair to require him to preserve for appeal claims related to admonishments, Rule 604 says otherwise. And states that a defendant is required to make a record of claims in motions to withdraw a plea. And the Supreme Court in the Davis case, the Illinois Supreme Court case from 1991, reviewed for plain error a forfeited admonishment claim. The court didn't see anything wrong with finding forfeited a claim of improper admonishment and reviewing it only for plain error. So to prove plain error, the defendant has to prove that error is plain from the record. And here the defendant can't meet his burden of showing that it's plain from the record, that he was prejudiced as a result of this admonishment. And that is the standard for determining whether a defendant can win a vacation of his plea based on a faulty admonishment, that he was prejudiced as a result of it. I thought you meant he was going on vacation. So one problem, one reason why he can't prove that is that the court never admonished, is that his claim is premised on this idea that he was threatened with mandatory natural life and that it was the state's withdrawal of that threat that resulted in his plea being illusory. But the court never admonished him that he was facing a sentence of mandatory natural life. And also testified at the hearing on this motion of withdrawal plea about why he did plead guilty, about what was going on subjectively in his mind. And he didn't mention anything about natural life sentencing, mandatory, discretionary, or otherwise. And further, the defendant is asking this court to construe in light most favorable to him the silence or interviewing the record concerning the state's substitution of these theories, contrary to the general rules that these silences or ambiguities are to be construed in favor of the state. So again, there's no prejudice because the admonishment did not cause him to plead guilty. Now, again, today the defendant is arguing that he pled guilty because he was threatened with mandatory natural life. The record doesn't bear that out. The state didn't say it at the plea hearing. The court didn't say it at the plea hearing. And further, it's not clear from what record we do have about the course of plea negotiations, a record that was built to buttress the defendant's unrelated claims, that he was ever told of the substitution. So he was told about natural life, but there is nothing that would support his belief that that could be mandatory. Because nobody used the language of the statute or stated the statute that would. That's correct, Your Honor. And I would just correct one thing, is that I wouldn't say that the defendant believed that he was being threatened with mandatory natural life. We're all hearing about that on the field. No, that's what I'm saying. There's no indication at all that there was any mention of mandatory natural life. Correct. And following up quickly, there was no discussion amongst the lawyers present and the court about mandatory, quote-unquote, natural life. That's not there. Correct. What we do have is defense counsel's or plea counsel's testimony at the hearing on the motion to withdraw a plea about the course of plea negotiations. And the reason for that is that the defendant was claiming that what was going on in his mind when he pled guilty was that she had promised him a sentence of between 20 and 25 years. But she was pretty then disappointed that he got 47. Right. So she testified that during the weekend before the plea hearing, the plea hearing occurred on Monday, May 6th. She testified that the weekend prior to that, so presumably the 4th or 5th, she visited him and explained to him that the state's offer was that they would withdraw natural life if he pled and then the state would recommend 60 years. There's no indication in her testimony that she then believed that mandatory natural life was on the table or that mandatory natural life figured in any way in plea negotiations. Again, the notice that the state had changed its theory wasn't filed until the next day. So the defendant in the refinery at page 4 argues that he was told of the plea deal on the day that he pled guilty, meaning May 6th, meaning the date that the state changed its theory. And from that, he asserts that he was told of the offer after the state changed its theory of mandatory natural life. But the record just doesn't bear that out. Yes, ma'am. Let's go to the second part of his claim, which is his lawyer didn't give him an discovery, so he was unable to make a, quote, unquote, educated decision on whether to plead guilty. And he claims that his lawyer said that she couldn't give him any of the documents, although it seems like at the hearing, he testified that he did get to see DVDs and transcripts. Well, what about that? Yes, Your Honor. Well, first, just to note and probably note that that claim isn't being renewed here in this appeal. Oh, okay. Then let's not talk about it. Okay. Let's move on. All right. She was in the briefs. I am. No, she testified that she read every line to him. Right. I saw that in the briefs. That's why I was wondering. Okay. Don't touch it. Okay. Got it. I also want to point out, because the record is completely silent or because the record doesn't show what effect, if any, the state's substitution on May 6th of the mandatory theory had on the course of plea negotiations. Maybe it affected plea negotiations. Maybe it didn't. There's certainly evidence suggesting that it didn't appear to based on the Court's uncontested admonishment to the defendant that the range was 20 or less. But that's one fact that distinguishes this case from a case cited by the defendant, the Davis case, and another case cited by the state, the Williams case. There are cases in which relief has been granted where a record reflects that negotiations were conducted under a mistake of law. But the record has to reflect that. And, for example, in the Davis case, which was a plain error case, the parties below agreed that the defendant had pleaded guilty, that the subjective reason in his mind for why he pleaded guilty was because he believed he could or would receive a task probation. And then it turned out that he was ineligible for that, and the parties agreed that that was a mistake in his mind and a mistake under which negotiations were conducted. And that formed the record from which the Supreme Court could find plain error in the Court's admonishment, which had ratified that misunderstanding. In this case, the Court did not ratify any misunderstanding under which plea negotiations were conducted, not only because the Court didn't – the asserted mistake is mandatory natural life, but here the Court didn't admonish him as mandatory natural life. And also, there's no evidence that the mandatory natural life statute played any role in plea negotiations. Yeah. Thank you very much for your comments. And I tend to allow people to go over them. Some of my colleagues don't. But to the extent that Ms. Kamen got a couple extra minutes, you will as well. Thank you, Your Honor. What is your rebuttal? So, Your Honors, again, the State is trying to place the responsibility of ensuring that the admonishments were proper on the shoulders of the defendant. Well, but shouldn't there be some proof that he was under a mistake of law? What is there to indicate that? So, I think the record is clear on this. The State argues that it's silent, but I strongly disagree. Okay. Tell us about that. Yeah. Tell us the specifics. Okay. So, first, I would like to say, People v. Whitfield, an Illinois Supreme Court decision says, a defendant who enters a guilty plea has a due process right to be properly and fully admonished pursuant to Rule 402. That's correct. That's not an issue unless he really thought that he was being admonished under a mistaken rule of law. Well, the court also, in that case, goes on to say that to have a defendant, let's see, to argue that a defendant must ensure his own admonishment in accord with due process is simply incorrect. So, that's essentially what… What does it say now? Read that line. So, this is, quote, to hold that a defendant forfeits his right to raise an improper admonishment claim by failing to first raise it in a post-trial motion to place the onus on the defendant to ensure his admonishment in accord with due process. Okay, well, let me ask you, if it wasn't filed, the change theory that was incorrect, was it filed until the day after the plea? How does that affect his voluntary plea when he was just told that he could get natural life and that could have been discretionary and that was what he then was told? I disagree with the State's presentation of that it was filed the day after the plea. Okay, well, that's what I want to hear. Yeah, so, in the State's brief on page 4, it notes on the day trial was scheduled to begin, May 6, 2013, the State filed an amended notice of its intent to seek natural life imprisonment. Okay, then when was the plea? And then the State goes on to say, the next paragraph, instead of going to trial on May 6, 2013, defendant pleads guilty to first degree murder. And this is the State's brief. But on the same day, May 6. Right, so the State says, all right, we're asking for mandatory natural life, that's what you're going to get, and then that day, defendant pleads guilty after this is filed. So, I think the threat of mandatory natural life was a good decision to encourage him to plead guilty and get the State out of going through a long trial. But I guess what, at least I'm saying to you, I won't put words in Justice Chapman's mouth, but I don't see the word mandatory. When I looked at it, it said, the judge said, the people agreed not to seek a sentence of natural life. It doesn't say mandatory in that line. And then it goes on to say, in that pursuant to negotiations, the sentencing range is 20 years to 60 years. So now he's reciting the agreement. Is there some place you can steer me to where the judge improperly used the mandatory word, which would have misled the defendant? So there's a few things. I do not have my notes in front of me about whether he used the word mandatory. But I do know the State's amended notice on page 72 in the record quotes section A1C2, the mandatory language saying that the defendant… We understand that. It's what was imparted to him. …by the court. And the court says, if you go to trial, you could be facing 20 years to natural life. Well, he could under a discretionary theory, so that would have been accurate. Well, that was off the table at that point. This amended notice superseded that. Wait. Off the table is a negotiation term. Oh, I'm sorry. Well, I mean, so… They filed the amendment. Right. The superseding amendment. Okay. It's inaccurate, the citation. Right? Well, it's not… It says mandatory. It was an unconstitutional reference. Right. But are you telling me that the defendant read that amendment and then knew that the law was unconstitutional? I mean, doesn't the defendant… Did the counsel have to say something about, that's why he pleaded guilty? I mean, what other proof would there be that this is why he pleaded guilty? So, while I think we can look at the improper admonishments themselves and find that that's enough, I do think there is enough in the record to support this argument as well, because defendant's trial counsel later on testifies at those hearings and it's clear from her testimony that she never explained to him that at the time of his guilty plea hearing, which is the relevant time, that he was never told of the proper sentence. Her testimony never makes that clear. Okay, but doesn't her testimony also make clear that she never thought it was mandatory life? I do believe that everyone was under a misapprehension of the law, and I think it's unfair… Wait, maybe you didn't understand what I said. I thought that she did not understand it to be mandatory life. She understood it to be discretionary. No, I don't… Am I wrong about that? I respectfully disagree. Okay. I do think that… I'll check that out. Well, and following up on that, I also have a note that says she testified the weekend before trial that she told him if he pled guilty, now this is the plea agreement I guess, that the sentencing range would be 20 to 60 years. Right. So that's what she told him. Yes, the weekend before he pled. I think it would help if I refer to the People v. Williams case out of the 3rd District to kind of help frame what the problem is here. Well, I'm not going to give you time to explain all that. Just give me the whole thing on that. Oh, okay. In that case, a defendant was facing only up to 30 years, and the court admonished him, you could get up to 60 years. And so the defendant in his plea deal arranged for a sentencing cap of 25 years. On appeal, the court said this improper admonishment led you to think you were getting a 35-year reduction in your sentence when only you were getting a five-year reduction. And they found that that improper admonishment itself was prejudice and found that he should be allowed to vacate his guilty plea. And the same is true here. We have a 24-year-old defendant with little criminal history. I think we would all agree that if he was properly told, if you go to trial at the way the state's charging you at this moment, you could get 20 to 60 years. But if you plead guilty, you could get 20 to 60 years. I think we'd all realize he'd say, wait a minute, what's the deal in this plea deal? What if I'm getting out of it? But that's not what the court told him. The court said if you go to trial, you might get natural life. But by pleading guilty, you're only getting up to 60 years. And that wasn't true at the time and the way the state was proceeding on these charges. Well, that's the proviso that you added on the end. But I don't think it's become pretty clear that he had no idea that it was mandatory. And the court never indicated that it was mandatory. And it was a possibility as far as in his mind that it could be discretionary. What else was he to think? So, I mean, does your client want to go to trial, go back to trial? For beating this child to death? I agree that the underlying facts are bad, but I don't think that factors into the due process principles that come into play. Well, we appreciate that. We appreciate that, too. Okay, well, okay, thank you for your comments. I'm sorry that time cuts things short, but they always seem to. We're going to take a temporary recess. We'll be right back in just a few minutes. All rise.